**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 06-CV-144-GFVT

ANTHONY WASHINGTON                                              PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

SUZANNE R. HASTINGS, WARDEN                               RESPONDENT

**** **** **** ****

Anthony Washington, who is confined in the United States Prison-Big Sandy in Inez, Kentucky ("USP-Big Sandy"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241.  After being denied permission to proceed *in forma pauperis* herein, he has recently paid the district court filing fee.

The petition and a later-filed supplement [Record Nos. 1, 8] are now before the Court for screening.  28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

<u>CLAIMS</u>

The petitioner challenges the United States Parole Commission's ("USPC") most recent decision to deny him parole on the ground that the parole decision reached by the USPC was arbitrary, capricious, and an abuse of the USPC's discretion.

<u>BACKGROUND</u>

The Court takes judicial notice that since Washington's incarceration in the Eastern District of Kentucky, this petitioner has become a frequent filer in this Court.  On several occasions, he has

paid the $5.00 habeas filing fee and presented the same challenges to USPC decisions in the past, denials of parole in 2001, 2002, and 2004. *See Washington v. Dove, et al.*, 05-CV-069-DCR; *Washington v. Reilly, et al.*, 05-CV-135-DLB; *Washington v. United States Parole Commission, et al.*, 06-CV-011-KKC; and *Washington v. Hastings*, 06-CV-100-KKC. He has been entitled to relief in none. He now challenges the USPC's 2006 decision.

<u>FACTUAL ALLEGATIONS</u>

The following is a summary or construction of the allegations contained in the instant petition and attachments thereto. Record No. 1.

Petitioner Washington begins with facts about his conviction. He states that in 1987, he was indicted for one count of Second Degree Murder in the District of Columbia. On February 29, 1988, a jury convicted him, and on April 22, 1988, he was sentenced to fifteen years to life. He came before the D.C. Board of Parole for the first time in 1997 and was denied parole then. Washington states that he later came before the USPC and was denied parole in 2001, 2002, 2004, and 2006.

In the USPC's May 23, 2006 decision, of which the petitioner complains, he was again denied parole, and his next consideration for parole was set for two years hence, in 2008. The petitioner claims, as he has about previous parole decisions, that the USPC's decision, including a departure from the pertinent guidelines, was arbitrary and capricious. He specifically complains that in 2006, the USPC wrongly "resurrected" the 1988 murder conviction, impermissibly using it as a ground for its 2006 decision. Since it had not used the murder conviction in its 2001 decision, he argues, the USPC "procedurally waived" its right to rely on it later, in 2006.

Petitioner Washington asks the Court to compare the USPC's 2001 decision about him

2

against the 2006 decision, and he attaches as exhibits copies of all of his USPC decisions, including those two.  In the USPC's first decision about Washington, on December 28, 2001, the USPC noted that the D.C. Board of Parole had ordered a complete psychiatric or psychological report in 1997, "but none is reflected in the current information."  The reasons for denying parole in 2001 were then explained as follows:

> With adjustments reflecting your institutional record since your last hearing, your current Grid Score is 0.  You continue to be scored under the 1987 guidelines of the D.C. Board of Parole.  Those guidelines indicate that parole should be granted at this time.  After consideration of all factors and information presented, a departure from the guidelines at this consideration is warranted because a request for an up to date psychological evaluation is requested.

Exhibit 4, dated December 28, 2001.

Accordingly, the USPC ordered that he continue serving his sentence, with a rehearing to be had the next year, contingent on the availability of a complete psychiatric or psychological report. The petitioner alleges that the evaluation was conducted; it showed that he was a "low risk for recidivism"; he was therefore considered for parole in 2002, but parole was denied, nonetheless. He attaches  copies of the 2002, 2004, and 2006 decisions.

In the 2006 decision, as in its previous parole decisions, the USPC again recited the petitioner's being scored under the 1987 D.C. Board of Parole guidelines and again concluded that he had 0 points, a score which indicates that parole should be granted.  However, the USPC also denied parole again, explaining this time as follows:

> . . . After consideration of all factors and information presented, a departure from the guidelines at this consideration is warranted because you are a more serious risk than indicated by your point score in that you committed a brutal unprovoked murder of a female with a knife.  The unusual brutality of this offense is demonstrated by numerous stab wounds to the victim's head and chest.
>
> Your rehearing date is set according to the time ranges established by the guidelines

for the time to rehearing.  The range in your case is 24-24 [*sic*] months.  A departure from these guidelines is not found warranted.

Exhibit 7, dated May 23, 2006.  The decision was not appealable.

On July 17, 2006, Washington filed the instant petition for writ of habeas corpus to challenge the USPC's May 23rd decision.  He asks for a new parole hearing in which the USPC cannot use the 1988 murder as the reason for denying parole.

## DISCUSSION

On August 5, 1998, the D.C. Board of Parole was abolished and the U.S. Parole Commission took over all parole matters for D.C. offenders, such as the instant petitioner.  National Capital Revitalization and Self-Government Improvement Act, Pub.L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745; *Franklin v. Dist. of Columbia,* 163 F.3d 625, 632 (D.C.Cir.1998); 28 C.F.R. §2.70(a); D.C.Code §24-131.  Just the year before, in 1997, the petitioner had made his first appearance before the Board, which had ordered psychological counseling for Washington.[1]

When the USPC took over the authority to decide parole matters of D.C. Code offenders in 1998, it was also empowered to amend or supplement any regulation interpreting or implementing the parole law of the District of Columbia.  Accordingly, the USPC[2] incorporated and developed its own guidelines for making parole decisions for D.C. prisoners, and these are now codified in 28 C.F.R. §2.80.  The end result is that D.C. parole laws and regulations must be applied when making

---

[1]  Therefore, because this had not happened when Anthony Washington first appeared before the USPC in 2001, the new parole authority made future consideration contingent on "an up to date psychological evaluation," obviously a reasonable first decision.

[2]  Although the Parole Commission and Reorganization Act of 1976 was technically repealed on November 1, 1987, the U.S. Congress has repeatedly extended the life of the USPC, which is currently set to expire on October 31, 2008.  *See U.S. Parole Commission and Sentencing Commission Authority Act of 2005,* P.L. 109-76, Sec. 2.

4

parole decisions for prisoners serving D.C. terms of incarceration in federal prisons.  *Jackson v. Compton*, 2003 WL 24146652 (W.D. Va. 2003) (slip op); 28 C.F.R. §2.80(a)(4).

Although Petitioner claims that the USPC's 2006 decision was arbitrary, capricious, and an abuse of the USPC's discretion, the record is to the contrary.  The record provided by the petitioner himself shows that the USPC used the D.C. regulations and guidelines in both of the two decisions which he asks the Court to compare, those in 2001 and 2006.

The petitioner's claim that the USPC had waived use of the 1988 murder earlier and impermissibly "resurrected" it in 2006 is simply not true.  Even in the 2001 decision, which turned on the need for a psychiatric evaluation, the USPC did not ignore the 1988 murder.  It explained that the focus of such a psychiatric or psychological report was necessary on "the likelihood of future violent criminal behavior in that you continue to deny committing the murder of the victim who was stabbed to death."  The USPC's intervening decisions in 2002 and 2004 (Exhibits 5-6) also relied, *inter alia*, on the nature of the offense, as the petitioner admits herein.

There is nothing in the guidelines which would make it wrong for the USPC to rely on Anthony Washington's violent conduct in 1988 to deny him parole in 2006.  To the contrary, in determining whether a D.C. offender should be paroled, the guidelines provide for assigning "numerical values to *pre- and post*-incarceration factors."  28 C.F.R. §2.80(b) (emphasis added).  Importantly, in subsection (n), the regulation provides for decisions above the guidelines for an offender who "is a more serious parole risk than indicated by the total point score because of – . . . [u]nusual cruelty to the victim. . ."  *Id.* at (n)(2)(ii)(C).  Or because of any "[u]nusual propensity to inflict unprovoked and potentially homicidal violence, as demonstrated by the circumstances of the current offense."  *Id.* at (n)(2)(ii)(D).

5

As one can tell from the language of the regulation and the USPC's stated reasons for its decision, the regulation's factors clearly guided the USPC's 2006 decision to depart from the guidelines "because you are *a more serious risk* than indicated by your point score in that you committed a *brutal unprovoked murder* of a female with a knife.  The unusual brutality of this offense is demonstrated by numerous stab wounds to the victim's head and chest."  Exhibit 7.

Federal courts may review decisions by the USPC only to determine whether a rational basis exists for the Commission's conclusions and to consider whether the Commission acted within its statutory and regulatory authority.  *See Kimberlin v. White*, 7 F.3d 527, 533 (6th Cir.  1993); *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 129-30 (6th Cir.  1987) (per curiam); *Farkas*, 744 F.2d at 39 (6th Cir.  1984).  *Cf.  Solomon v.  Elsea*, 676 F.2d 282, 290 (7th Cir.  1982).

"Thus, the inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions."  *Hinson v.  United States*, 205 F.3d 1340, 1999 WL 1296871 at *1 (6th Cir.  1999) (unpublished).  The USPC's finding herein, that the "brutal" and "unprovoked" nature of the murder and Washington's denial of it for years warranted a departure from the guidelines, is permissible under the regulations and supported on the record.

Any challenge to the substance or merits of a parole decision cannot be the basis for a successful habeas petition because it is based upon review of a factual determination of the USPC.  *See Hackett*, 851 F.2d at 129; *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir.  1984); *see also Goodman v. Hurst*, 47 F.3d 1168 (6th Cir.  1995) (applying *Farkas* to prisoners serving their sentence in a federal correctional facility for violation of the District of Columbia Code).  A federal court may not overturn a decision by the USP "unless there is a clear showing of arbitrary and capricious action

or an abuse of discretion." *McKinnon v. Conner*, 120 Fed.Appx. 280, 283 (10th Cir. 2005).

No such showing has been made herein and the Court may not, therefore, intrude in the process to grant the petitioner a different result or another hearing before 2008. As to any claim based on the U.S. Constitution, due process rights are triggered only by the deprivation of a legally cognizable property interest, to which parole does not give rise. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). Nor is there a basis for release under the doctrine of substantive due process when the parole statutory scheme does not afford the inmate a protected liberty interest in parole. *Bailey v. Gardebring*, 940 F.2d 1150 (8th Cir. 1991). There is nothing in the parole scheme or its application to this petitioner that shocks the conscience of the Court. *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1951); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)).

"A prisoner has a constitutional right, founded on either the Fifth or Eight Amendment, or both, not to be imprisoned past the date his sentence expires." *Sloan v. Pugh*, 2005 WL 2464678 at *1 (D.Colo. 2005) (slip op.) (citing cases from the Second, Fifth, Eighth, Ninth, and Tenth Circuits). To the extent that the petitioner makes his Eighth Amendment claim under such a rubric, it, too, is meritless. While imprisonment beyond one's legitimate term can constitute cruel and unusual punishment for purposes of the Eighth Amendment (*see Sample v. Dieks*, 885 F.2d 1099, 1108-10 (3rd Cir. 1989)), Washington has been sentenced to life imprisonment, and so he has no such claim.

The instant petitioner having failed to state a claim upon which this Court may grant relief, his petition will be denied, *sua sponte*.


CONCLUSION

Accordingly, **IT IS ORDERED** that Anthony Washington's petition for writ of habeas corpus is **DENIED**.  This action will be **DISMISSED** from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This 5th day of September, 2006.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

8